**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ADA THAXTER** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Docket No.** |
| | ) | |
| | ) | **JUDGE** |
| | ) | |
| **METROPOLOTAN GOVERNMENT** | ) | |
| **OF NASHVILLE AND DAVIDSON** | ) | |
| **COUNTY, TENNESEE** | ) | **JURY DEMAND** |
| | ) | |
| **Defendant.** | | |

---

## COMPLAINT

---

COMES NOW Plaintiff, Ada Thaxter (hereafter "Plaintiff" or "Ms. Thaxter") by and through counsel, and respectfully submits her Complaint against, Metropolitan Government of Nashville and Davidson County, Tennessee (hereafter "Defendant") and in support thereof would allege as follows:

### PARTIES

1. Plaintiff is a citizen and resident of Hermitage, Davidson County, Tennessee.

2. Defendant, Metropolitan Government of Nashville and Davidson County, Tennessee ("Defendant" or "Metro"), is a consolidated city-county government located at 200 James Robertson Parkway, Nashville, Tennessee 37201. Defendant employs more than 500 employees and can be served through its Director of Law, Saul Solomon, Esq., Metropolitan Government of Nashville, Department of Law, Metro Courthouse, Suite 108,

1

P.O. Box 196300, Nashville, Tennessee 37219.

## JURISDICTION AND VENUE

3. This action is brought under Title 42 U.S.C § 1983 as a civil action in violation for the deprivation of rights.

4. Jurisdiction and venue are proper in this Court as Plaintiff and Defendant are located within Davidson County and all or a substantial portion of the acts and/or omissions claimed herein occurred within the boundaries of Davidson County, Tennessee.

5. This Court has jurisdiction under 28 U.S.C. § 1331 to hear Plaintiff's claims arising under the Constitution and laws of the United States.

## FACTS

6. On or about July 20, 2014, Commander Kaye Lokey called and advised Plaintiff that she selected Plaintiff to work for her at the Midtown Hills Precinct and that the grand opening would occur on August 16, 2014.

7. On or about Monday September 1, 2014, Officer Samuel Ruth was insubordinate and Commander Lokey wanted Plaintiff to monitor Officer Ruth's behavior instead of write him up for insubordination which was the proper procedure.

8. On or about October 15, 2014 Commander Lokey and Plaintiff discussed how Sergeant Jason Spenser was giving Plaintiff a hard time. During this conversation, Plaintiff

2

reassured Commander Lokey that she had her back but that she needed Commander Lokey to support her as well to which Commander Lokey responded, "I can't move a Flex sergeant." During this conversation, Commander Lokey never asked what issues Plaintiff had with Sergeant James Spencer.

9.  From approximately September 1, 2014, through December 31, 2014, Officer Lokey's responses and interactions with Plaintiff became distant, Her Commander did not respond to emails. In reaction to this behavior, Plaintiff notified the B detail sergeants that it was becoming more difficult to work for an uncommunicative Commander but that Plaintiff would continue to run the detail to the best of her ability without guidance or help from her superior. She also notified B detail sergeants that she was displeased with Sergeant Spencer's behavior and his interaction with his co-workers.

10. On or about January 2, 2015, Plaintiff, during Sergeant Spencer's yearly evaluation informed him that Deputy Chief Brian Johnson and Commander Lokey were dissatisfied with his two previous complaints that he had received Control numbers 099814C use of hand-held mobile and 103214C official obligation. Technically, his complaints amounted to three (3) total complaints and not two (2) while under Plaintiff's supervision. One complaint involved Plaintiff responding to a scene at a traffic stop that Sergeant Spencer's Flex team had initiated on Nolensville Pike after a State Representative complained about how Spencer treated him. Spencer's response was that the Supreme dictates how he responds and allows for him to stop suspicious vehicles.

3

11. Following this incident, once again, Plaintiff indicated to Commander Lokey how difficult it was to supervise the obstinate Sergeant Spencer. Plaintiff requested that Sergeant Spencer be moved and replaced by Sergeant Ted Woosley because he was a better fit, more respectful, and cared about his officers that he worked so closely with. Again, Plaintiff reminded her Commander that she had her back and hoped that the Commander had her back in return. However, Commander Lokey denied Plaintiff's request and stated again that she "can't move a Flex sergeant."

12. During Sergeant Spencer's counseling, Plaintiff informed him that the Commander denied her from moving him and she told him that if the Commander kept him on Flex for 2016 then Plaintiff would asked to go to another precinct because she was not going to go through another situation like the traffic stop again. In the same meeting, she also informed him that if he received another complaint she would not "fluff" any more complaints for him he was on his own to clear his complaints. She reminded him that no Sergeant should receive multiple complaints back to back.

13. On or about Tuesday, February 24, 2015, Commander Lokey cancelled Plaintiff's half (1/2) shift vacation because a protest meeting was developing at MTH. However, Commander Lokey already approved her vacation time on Sunday, February 22, 2015 so she could take her Bachelors final test on Wednesday, February 25, 2015. When Plaintiff reminded her that she was already off that day her Commander and she retorted that Plaintiff should have reminded her that she requested time off. From that point going forward, Plaintiff started personally sending return receipt trackers and emailing her

4

Commander anytime she had to correspond with her after this incident. Commander Lokey still did not ask what troubles Plaintiff was having with Sergeant Spencer.

14. On or about March 24, 2015, Officer Johnny Cantrell filed a complaint (Control #048215C) after being informed to read the truthfulness policy. Commander Lokey investigated the matter which was not complete or accurate because she purposefully left Plaintiff's statements surrounding the incident out. Plaintiff previously sent Commander Lokey two separate emails on February 23, 2015 and February 26, 2015 requesting guidance on dealing with this officer, which Commander Lokey never replied to either request. The result of the case was "Not sustained instead of Exonerated."

15. On or about April 23, 2015, Sergeant Spencer received his fourth complaint (Control #051115C) which led to him harassing, questioning, and retaliating against Plaintiff after she refused to alter her "Sustained" findings.

16. On or about May 29, 2015, Plaintiff turned in Sergeant Spencer's completed packet to the Midtown Precinct PACL Lieutenant Eric Snyder with a courtesy charge. She "Sustained" the complaint recommended and suggested a 311 after reading Sergeant Spencer's supplement report along with the complainant's email. She was informed to change the finding to "Not Sustained" by Lieutenant Snyder and to delete some of the information that was included in her original report. However, after reading her findings again, Plaintiff disagreed with the "Not Sustained" label and kept the original charge of "Sustained".

5

17. On or about June 2, 2015, Commander Lokey presented Plaintiff with two 216A lieutenant work test period evaluations prior to her departure to the SMIP course in Boston, Massachusetts. After reading one of the evaluations, Plaintiff told her Commander that she did not agree with the evaluation. Plaintiff informed her Commander that one particular situation in the evaluation in which she received a complaint from Officer Cantrell could have been avoided if Commander Lokey had responded to Plaintiff when she asked for assistance. Plaintiff went on to explain to Commander Lokey that she sent her two emails, one on February 23 and one on February 26 asking to discuss three (3) officers and one (1) sergeant whom Plaintiff had concerns with who were negatively affecting the detail. At this time, Plaintiff pleaded with Commander Lokey that she needed to start supervising and she needed to stop deflecting, ignoring, and systematically dismissing issues Plaintiff brought to her attention.

18. On or about June 5, 2015, Plaintiff attended the SMIP course in Boston, Massachusetts until June 25, 2015.

19. On or about July 21, 2015, Commander Lokey sent Plaintiff her yearly evaluation via email. In response to seeing and disagreeing with her scores, Plaintiff wrote a three (3) page rebuttal and requested to meet with her Commander so that she could further discuss her evaluation. Plaintiff was disappointed because per her evaluation, Commander Lokey never verbalized expectations even when Plaintiff inquired two (2) to three (3) times. Further, Commander Lokey never trained Plaintiff on how to present BIG Compstat to the Chief. As a result, Plaintiff had to go to another Commander Terrance Graves as well as

6

Lieutenant Joe Towers who helped her complete that task.

20. On or about July 22, 2015, during Plaintiff's evaluation meeting with Commander Lokey, Commander Lokey told Plaintiff that she heard that Plaintiff wanted to go to North Precinct at rebid. At that point, Plaintiff notified her that she wanted to go to a precinct where the Commander "had her back" such as a Commander like Terrance Graves. Commander Lokey suggested that they just "ride this year out" to which Plaintiff replied that she still wanted to talk about rebid and requested that Commander Lokey not select her for 2016. Plaintiff felt strongly about this situation because she felt like she had Commander Lokey's back yet she never had Plaintiff's back. Specifically, Plaintiff never worked in an environment she was promised at the outset of her employ under Commander Lokey. Instead, any time Plaintiff came to her with an issue she routinely ignored her. At this meeting, Plaintiff informed Commander Lokey that she had been on the receiving end of sexual harassment at work and that she felt like she could not come to her with her problems out of fear that Commander Lokey would accuse her of misleading said person. Commander Lokey never once asked who the person at issue was and instead diverted the conversation back to Plaintiff's workload and when she was volunteering to assist other agencies or units in the department. Later that same day, Plaintiff followed up with Commander Lokey to see what the status was Sergeant Spencer's packet.

21. On or about July 24, 2015, Commander Lokey informed Plaintiff that she sent Sergeant Spencer's packet to OPA for review that very day. This was the first time Plaintiff learned that the packet was being reviewed outside of the precinct.

7

22. On or about Tuesday, August 18, 2015, Plaintiff had a closed door meeting with Midtown Hills sergeants Krumrow, Rucker, Hartely, Kooshain, involving Sergeant Jason Spencer videotaping three black officers in his segment.

23. On or about August 24 through August 29 Plaintiff received Sergeant Spencer's packet from OPA where Captain Christopher Gilder recommended two (2) additional charges. Plaintiff disagreed with Commander Lokey and Lieutenant Eric Snyder's attempts to clear Sergeant Spencer's misconduct. Plaintiff informed Commander Lokey of the additional charges. At all times, Commander Lokey continued to try to use her authority to influence Plaintiff to violate policy. At that time, Sergeant Spencer was currently facing six (6) charges.

24. On or about Tuesday September 1, 2015, Sergeant Spencer filed a complaint against Plaintiff after she refused to change his suspension days and the charges on his fourth complaint (Control #051115C).

25. On or about Friday September 4, 2015, Plaintiff received her notice of complaint from OPA.

26. On or about Saturday September 5, 2015, Plaintiff filed an official OPA complaint against Commander Kaye Lokey to Deputy Chief Brian Johnson for the following:

    a. Failing to supervise and failing to report Plaintiff's sexual harassment allegation on

8

July 22, 2015.

b. Hostile Work Environment due to interfering in use of force and the complaint process, trying to persuade Plaintiff to change her investigative findings on three (3) cases. (Officer E. Harvey 108 assigned to Sergeant E. Rucker, Officer W. Reeves 108 assigned to Sergeant Spencer, and Sergeant Spencer 312).

c. Discrimination.

d. Retaliation for properly doing her job.

27. On or about Wednesday, September 16, 2015, Plaintiff had her first interview with OPA involving the complaint against her with Sergeant Atif D. Williams asking questions which lasted approximately three and a half (3 ½) hours.

28. On or about Monday, September 28, 2015, Plaintiff had her first interview with HR conducted by Sue Bibb, Christy James in charge of Payroll, and Dewayne Taylor who oversaw Background and Recruitment in regard to the August 18, 2015 incident involving Sergeant Spencer videotaping black officers.

29. Later that day the Chief of Police, Steve Anderson along with the secretary Mrs. Debbie Savage contacted Plaintiff and asked if she would come downtown for a meeting. At the meeting, Mr. Anderson mentioned he just wanted to know a little about Plaintiff. He inquired about her background, her upbringing, and childhood. Eventually, Plaintiff brought up the strained working relationship she had with Commander Lokey. The Chief asked her if she would like a transfer and she retorted that she had not done anything wrong

9

in the situation and thus she should not be forced to transfer.

30. On or about Tuesday, September 29, 2015, Plaintiff was visiting her brother Lieutenant Aussie Thaxter at the Tennessee Highway Patrol. At this time, Sergeant David Howard the very same man who sexually harassed Plaintiff, texted her a harassing and threatening text. Immediately, Plaintiff contacted Sergeant Williams who told her to call Captain Christopher Gilder about this incident. Plaintiff did as she was told and Captain Gilder asked for her to send him a screenshot of the text message. Captain Gilder and Plaintiff discussed in detail the text and he made a decision to not Decommission Sergeant Howard.

31. Plaintiff informed Captain Gilder that she would be going on military leave in three (3) to four (4) days and that she would be safe until then. She also informed Captain Gilder that she would tell Sergeant Kumrow and Sergeant Rucker to be on alert just in case something developed at work.

32. On or about October 1, 2015, Plaintiff was interviewed by Sergeant Carlos Lara about the complaints she filed against Commander Kaye Lokey.

33. On or about Sunday, October 4 - November 10 Plaintiff reported to military leave for her staff and command (WOILE) course at Fort Rucker, Alabama. Plaintiff took excuse time from November 11-15, 2015.

34. On or about Monday, October 19, 2015, Plaintiff was contacted by HR director Sue Bibbs asking if Plaintiff wanted to transfer she declined but told her she appreciated the opportunity but she did not want to transfer unless she was told to as she did not do anything wrong but if the department thought it was in her best interest she might reconsider.

35. On or about Monday, November 16, 2015, once Plaintiff returned from military/ excuse leave, she noticed that Sergeant Spencer's complaint packet had been sent back from Captain Kenneth Walburn.

36. On or about Wednesday, November 18, 2015 , Plaintiff requested to be removed from the case concerning Spencer. Plaintiff sent Captain Walburn an email, however, she did not get a response back from him. Therefore, Plaintiff continued to work on the complaint until Saturday, November 21, 2015.

37. On or about Thursday, November 19, 2015, Plaintiff sent Sergeant Spencer an email stating, "Sergeant Spencer, if you saved your original complaint supplement on 2015-0383678 (051115C) before you added Captain Gilder proposals. Please give me a copy. After reviewing the packet, some quotes that were in the original supplement are not in the one that I currently have."

38. On or about Friday, November 20, 2015, during Plaintiff's FSS duty she attempted to complete corrections on a citizen compliant filed against Sergeant Jason Spencer (Control #05115C) that was initiated on April 23, 2015. Captain Kenneth Walburn asked for several clarifications regarding the complaint. During her revision, she noticed that some of the

11

information in Sergeant Spencer supplement was missing and or other statements were added without Plaintiff's knowledge which brought additional questions surrounding her original findings/conclusions. Sergeant Spencer sent Plaintiff two supplements via email stating, "LT, I have both supplements the original and the one that I completed as requested to address Captain Gilders questions. I have attached both to this email. If there is anything else that you need please let me know." Plaintiff responded, thanking him and telling him his packet was sent back addressing original quotes that were not in the second packet.

39. Plaintiff contacted Captain Gilder and informed him of the changes on the supplement packet. She informed him that the differences on the supplement packet that was sent with the packet led Captain Walburn to question the packet's synopsis and findings. Captain Gilder and Plaintiff then discussed in detail the importance of Sergeant Spencer locating his original complaint supplement. Captain Gilder stated that Sergeant Spencer should have turned in an 'Addendum supplement' instead of changing or revising his original supplement. Plaintiff informed Captain Gilder that she would request for the original supplement again so she could address the discrepancies.

40. On or about Saturday, November 21, 2015, Plaintiff sent an email again to Sergeant Spencer stating to call her when he had a chance. The supplement he sent was still different from the original supplement she gave him on April 23, 2015. As a result, Plaintiff's completed synopsis was not lining up with his supplements and quotes.

41. On or about Saturday, November 21, 2015, Sergeant Spencer contacted Plaintiff and they spoke about his original supplement in detail. Sergeant Spencer admitted that he had

revised his original supplement. Plaintiff inquired why he would do such a thing without her knowledge to which he responded, "they told me to change my supplement." When Plaintiff asked who "they" was, he responded he could not remember but someone told him to change it. Sergeant Spencer stated the revision was completed by him in June 2015. She informed Sergeant Spencer that she would have been in Boston at that time and if the changes happened within that time period she would have no knowledge about it.

42. Plaintiff informed Sergeant Spencer that she completed the packet on May 29, 2015 and did not physically get the packet back until after Captain Gilder had made his recommendations on the charges on August 24, 2015. She also informed Sergeant Spencer that he did not give her a revised copy nor did anyone inform her that he had changed his original statement because she would have had to change her synopsis and findings. Plaintiff informed Sergeant Spencer she completed her corrections and findings on Friday November 20, 2015 during her FSS assignment but he was being given a chance to find the original version.

43. Sergeant Spencer and Plaintiff agreed that she would not turn the packet into Commander Lokey until Tuesday November 24, 2015, allowing him time to retrieve or find his original supplement.

44. On or about Thursday, November 19, 2015, Chief Steve Anderson asked Plaintiff to come to his office. During the meeting, he mandated her to transfer and report to Youth Service effective on December 1, 2015. Plaintiff declared that she did not want to go to Youth

13

Service, she would rather stay on patrol. The Chief discussed in detail why she should go and she needed to trust him. Chief Anderson took some responsibility for the transfer saying some of the issues were his fault stating, "Somethings I didn't know and somethings I was blindsided with and I take the blame." Plaintiff after much time and thought during her five (5) week military leave realized she did nothing wrong and she was the victim and now she was being transferred against her will.

45. On or about Friday, November 20, 2015, while Plaintiff was supervising an active "Transgender Protest" at 1008 Scarriitt Avenue, when Captain Howey contacted her about her transfer. He stated if she wanted to report before December 1st she could do so. Plaintiff informed him that she still had a complaint packet on her desk that needed she needed to correct.

46. On or about Sunday, November 22, 2015, Plaintiff received an email from Deputy Chief Brian Johnson directing her to cease any further investigation regarding Sergeant Jason Spencer's case and to make an appointment to talk to him about her transfer.

47. On or about Monday, November 23, 2015, Plaintiff reported to Deputy Chief Johnson to discuss Sergeant Spencer's packet and her mandated Youth Service transfer. DC Johnson informed her that her complaint was founded outside of policy after HR investigated the complaint. He stated that she could no longer supervise Sergeant Spencer to ensure that no one could charger her with retaliation due to the fact that his packet had not been finalized.

At the meeting, Deputy Chief Johnson also informed her that HR found the allegation against her to be "Sustained" that Sergeant Spencer filed on September 1, 2015 and that the transfer was needed. However, Commander Lokey was not transferred after Plaintiff the complaint against her.

48. On or about Monday, November 23, 2015, Plaintiff sent an email to Deputy Chief Brain Johnson and copied Commander Lokey stating she was just informed that Sergeant Spencer's original packet was sent to them that day and that she would drop the additional documents off in about an hour or so.

49. Later on November 23rd, Sergeant Edward Rucker and Plaintiff entered Plaintiff's office and noticed that Sergeant Spencer's complaint packet had been removed from Plaintiff's inbox without her knowledge. Plaintiff also noticed that the picture frame with her mom's picture had been removed from its original spot on her desk and laid face down on her desk. When Plaintiff asked the secretary, Mrs. Hansen if she had she allowed anyone into Plaintiff's office, Commander Lokey who was in Mrs. Hansen's office, immediately spoke up, and stated that she retrieved the packet and sent the packet downtown. Plaintiff informed Commander Lokey that she just left Deputy Chief Johnson's office who had given her specific instructions to stop working on the packet and to send him all the documents that had been completed.

50. On or about Monday, November 23, 2015, Plaintiff delivered Sergeant Spencer's revised 312 complaint packet to Deputy Chief Johnson.

51. On or about Wednesday, December 02, 2015, OPA Sergeant Jeremy Moseley sent an email requesting a settlement hearing for Monday, December 7, 2015 in regard to the complaint filed against Plaintiff by Sergeant Spencer.

52. Later that day, HR representative Jackie Hoffman contacted Plaintiff requesting a follow-up meeting pertaining to the sexual harassment complaint she filed against Sergeant David Howey

53. On or about Thursday, December 3, 2015, Plaintiff met with HR representative Sue Bibb, Background & Recruitment Dewayne Taylor, and payroll Ecko Johnson. Once the interview started Ms. Bibb stated the interview was pertaining to the hostile work environment complaint against Commander Kaye Lokey and not the Sexual Harassment claim she thought she was to discuss against Sergeant David Howey. Due to the confusion about the interview, Plaintiff requested a follow-up interview because she was not prepared to address the 'Hostile Work Environment' compliant only the sexual harassment incidents.

54. On or about Friday, December 4, 2015, Plaintiff reported to the HR office to give her Sexual Harassment and Hostile work Environment testimony. While waiting in the area outside of HR representative Sue Bibb's office, Plaintiff overheard her name being mentioned several times. At that time, she heard Mrs. Bibb make negative remarks, accusations, and conclusions that Plaintiff's case was meritless. Plaintiff walked into Sue Bibb's office to see her talking to Dewayne Taylor and Ecko Johnson and she felt that they had already made up their minds about her case so she felt further discriminated against. Therefore, Plaintiff notified Captain Gordon Howey by email and phone that she was going to file a complaint against Mrs. Bibb.

55. Later that day, Plaintiff spoke to Captain Howey in detail about how she did not trust the department after her interaction with Mrs. Bibb. After discussing the violations Captain Howey informed her that he was going to brief Deputy Chief Todd Henry before forwarding Plaintiff's complaint email to OPA. Mrs. Bibb sent Plaintiff an email excusing herself and her team off the two pending 'Hostile Working Environment and Sexual Harassment'. She was notified that Mr. Seth Waltenbaugh and or Mr. Brian Ward both are with Metro HR and would be contacting her shortly to begin the process.

56. On Wednesday, December 30, 2015, Metro PD HR informed Plaintiff that Channel 17 News Sabrina Hall requested to review her personal file. Plaintiff contacted Don Aaron to see why the news wanted to review her file. He informed her that someone from the Police Department had notified the news about her case. A few minutes later, the chief walked in

17

and hugged her. The COP stated they were going to get through this. She informed him that she was going through this situation because she stood up for what was right.

57. On or about Thursday, December 31, 2015, OPA Director Mrs. Kathy Monrante immediately walked over and hugged Plaintiff stated, "90- 95 percent of the stuff that the news printed was incorrect because she worked the case." She informed her she knew. Plaintiff hugged her and told her that the truth was going to come out eventually.

58. On or about January 6 – 13, 2016, Plaintiff completed her eight (8) calendar day suspension after HR Director Sue Bibb completed her investigation of Sergeant Spencer's complaint.

59. On or about January 14, 2016, a Metro DV detective contacted Plaintiff requesting an interview for the following day. Plaintiff informed the detective that she was excused until January 19th and could meet with him.

60. On or about January 19, 2016, Plaintiff met with Deputy Chief Todd Henry and Captain Gordon Howey to get re-instated back to work after her decommission suspension days. Deputy Chief Henry informed her that Commander Kaye Lokey filed a complaint against of "Untruthfulness" with OPA against Plaintiff. Deputy Chief Todd Henry informed Plaintiff that she would be decommissioned until the investigation was complete. He then reassigned her to the Records Division and advised her that she could not work in the Youth Service Division pending the investigation. During her meeting, she asked Deputy Chief Henry why she was being moved a second time when Commander Lokey and HR Director Sue Bibb have not moved, as they are currently under investigation as well.

o   Commander Lokey was "Untruthful" during her OPA investigation surrounding Plaintiff's sexual harassment complaint.

18

- Mrs. Bibb was biased and interfered with Plaintiff's hostile working environment and sexual harassment complaint during her interview on December 4 and 5th, 2015.

- Sergeant David Howard was not decommissioned or transferred after Plaintiff filed sexual harassment against him on September 16, 2015. .

61. From January 25 – February 29 Plaintiff requested FMLA.

62. After meeting with her therapist, Plaintiff requested another 30 days leave from February 29 to March 28, 2016.

63. Plaintiff was forced to "Resign" due to the fact that she knew she would not be treated fair by her supervisors or subordinates within the Police Department.

## CAUSES OF ACTION

### COUNT ONE: Violations of 42 U.S.C. § 1983

64. Plaintiff incorporates by reference, as if fully set forth herein, all preceding paragraphs of this Complaint.

65. Plaintiff was mandated to transfer for her refusal to remain silent about the harassing and discriminatory treatment to which she was subjected to by Defendant.

66. Plaintiff was demoted as a direct and proximate result of refusing to remain silent about Defendant's improper actions and other unlawful and discriminatory treatment directed towards Plaintiff.

67. As a direct and proximate result of Defendant's illegal retaliatory treatment of Plaintiff for her refusal to remain silent, Plaintiff has suffered and continues to suffer loss of income

and other employment benefits, distress, humiliation, embarrassment, emotional pain and suffering, and other damages.

**COUNT TWO: Violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e: Gender, Sexual Harassment and Retaliation**

31.     Plaintiff incorporates by reference, as if fully set forth herein, all preceding paragraphs of this Complaint.

32.     Defendant has over 15 employees.

33.     During all times complained herein, Defendant was an employer under the terms of Title VII of the Civil Rights Act, 42 U.S.C. 2000e (b) and (f), and as such, Defendant is subject to the rules, regulations and penalties of this law.

34.     Plaintiff engaged in protected activity when she made complaints against a fellow employee.

35.     Defendants did segregate or classify Plaintiff, based upon her gender, in a way that deprived employment opportunities to Plaintiff or otherwise adversely affected her status as an employee.

36.     Defendant denied Plaintiff the opportunity to be employed free of sexual harassment and retaliation in the workplace.

37.     Plaintiff was retaliated against based on her participation in a protected activity.

38.     This discrimination on the part of Defendant constitutes a violation of the Plaintiff's rights under Title VII.

20

39.     The discriminatory employment practices, described herein, have caused Plaintiff to experience harm, including emotional distress, humiliation, indignity and resulting injury and loss along with other damages.

**COUNT THREE: Violations of Tennessee Whistleblower Act, T.C.A. 50-1-304**

40.     Plaintiff incorporates by reference, as if fully set forth herein, all preceding paragraphs of this Complaint.

41.     The conduct described herein constitutes unlawful violations of T.C.A. §50-1-304 in that Plaintiff was willfully terminated by Defendant in retaliation for Plaintiff complaining about unethical and dangerous behavior in the workplace.

42.     Plaintiff was subjected to harassment and a groundless disciplinary action, which evidences retaliatory intent on Defendant's part for Plaintiff's refusal to stay silent.

43.     Plaintiff's complaint served an important public policy purpose in that she was attempting to ensure the precinct followed policy and disciplinary guidelines.

44.     Plaintiff was subjected to harassment in violation of the Tennessee Whistleblower Act in retaliation for complaining about unethical and dangerous behavior in the workplace.

45.     As a direct and proximate result of Defendant's actions as described herein, Plaintiff has suffered and continues to suffer distress, humiliation, embarrassment, emotional pain and other damages including lost wages.

**PRAYER FOR RELIEF**

Wherefore, Premises Considered, Plaintiff prays of this Honorable Court as Follows:

1.  That this Complaint be filed with this Court;

2. That proper process issue and be served upon Defendant;

3. That Defendant be required to answer this Complaint within the time prescribed by law in the Federal Rules of Civil Procedure;

4. That a Jury be empaneled and Plaintiff be granted a jury trial in this cause;

5. That Plaintiff be granted all lost income and benefits to which he is entitled as requested herein above;

6. That Defendant be enjoined from continuing such discriminatory employment practices;

7. That Plaintiff be granted a judgment for compensatory damages requested herein;

8. That Plaintiff be granted his reasonable attorney's fees and all discretionary costs in this action; and,

9. That Plaintiff be granted such other, further, or general relief to which he may be entitled.

Respectfully submitted,

/s R. Patrick Parker
R. Patrick Parker, BPR # 16847
131 Saundersville Road, Suite 110
Hendersonville, Tennessee 37075
Phone:  (615) 933-0110
Fax: (615) 265-8766
pparker@hardaway.net

22